200 N.J. Super. 159 (1984)
491 A.2d 1
DORIS DORN, PLAINTIFF-RESPONDENT,
v.
TRANSPORT OF NEW JERSEY, A CORPORATION, DEFENDANT-APPELLANT, AND JOHN DOE (FICTITIOUS), DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 1984.
Decided November 13, 1984.
*161 Before Judges MATTHEWS, FURMAN and COHEN.
William P. Malloy, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General, attorney; William P. Malloy, on the briefs; James J. Ciancia, Assistant Attorney General, of counsel).
Kenneth J. Fost argued the cause for respondent (Kathryn N. Roettger, on the brief).
PER CURIAM.
On September 11, 1980, plaintiff was a passenger on a bus operated by Transport of New Jersey (TNJ). Apparently, a car cut in front of the bus in order to turn right into a parking lot. Plaintiff was seated on a bench seat, with her back to the left side of the bus, in the third place from the driver. There was no one seated between the driver and plaintiff, Dorn. When the bus stopped short, she was thrown forward into the back of the driver's chair, striking her face on the left side.
On October 16, 1980 the entire stock of defendant, TNJ, was purchased by the New Jersey Transit Corp. (NJT Corp.) pursuant to N.J.S.A. 27:25-13. Plaintiff filed her Complaint on December 31, 1981, and served it on the defendant on March 4, 1982. Defendant's Answer was filed on April 20, 1982.
*162 Before trial began, the trial judge heard defendant's motion, to apply the provisions of the New Jersey Tort Claims Act (N.J.S.A. 59:1-1 et seq.) to the litigation. The judge denied defendant's motion, and commenced trial before a jury. The jury's verdict, after three days of trial, awarded a lump sum of $25,000 to plaintiff. Thereupon, the judge awarded $4,733.33 prejudgment interest, to which defendant again objected as barred by N.J.S.A. 59:9-2. Interest was calculated from December 31, 1981 to July 28, 1983.
The threshold principle in this appeal is whether TNJ, an entity whose sole stockholder is the NJT Corp., is a "public entity" as defined in N.J.S.A. 59:1-3.
N.J.S.A. 59:1-3 of the New Jersey Tort Claims Act, defines a public entity as:
the State and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.
The legislative comment further provides:
The definition of "Public Entity" provided in this section is intended to be inclusive and to apply uniformly throughout the State of New Jersey to all entitles exercising governmental functions.

[Emphasis added, Comment, N.J.S.A. 59:1-3]
The NJT Corp. was created by the Legislature in the New Jersey Public Transportation Act of 1979. The act provides:
a. There is hereby established in the Executive Branch of the State Government the New Jersey Transit Corporation, a body corporate and politic with corporate succession.... The corporation is hereby constituted as an instrumentality of the State exercising public and essential governmental functions, and the exercise by the corporation of the powers conferred by this act shall be deemed and held to be an essential governmental function of the State. [N.J.S.A. 27:25-4; emphasis added]
This public entity was created for the purpose of providing efficient, coordinated, and responsive public transportation. N.J.S.A. 27:25-2(a). In order to carry out its purpose, NJT Corp. was empowered to acquire, by asset or stock purchase, private or public entities providing public transportation services. N.J.S.A. 27:25-23. Pursuant to these powers, on October 15, 1980, approximately one month after plaintiff's accident occurred, NJT Corp. purchased all the stock of defendant TNJ. *163 Because TNJ is the instrumentality through which NJT Corp. exercises some of these governmental functions, it is therefore, and was at the time the judgment was entered, itself a "public entity" for purposes of the Tort Claims Act.
Plaintiff argues that (1) there was no proof that NJT Corp. absorbed TNJ; (2) the fact that TNJ is a corporation and a "separate legal entity" should preclude the Tort Claims Act exclusion of prejudgment interest; (3) TNJ does not carry on governmental activities, and (4) the Tort Claims act was not intended to have retroactive application.
Actually, plaintiff does not have a retroactivity argument. She merely alleges that this provision of the Tort Claims Act should not apply because the defendant was not a "governmental entity" at the time of the accident and that TNJ does not carry on governmental functions.
By definition in the New Jersey Public Transportation Act, the provision of public transportation is an essential governmental function. Therefore, TNJ, by carrying on this function, is a governmental agency. Defendant's "retroactivity" argument does not apply to the provision precluding interest assessed against a public entity "prior to the entry of judgment" (N.J.S.A. 59:9-2(a)) because, at all times between the filing of the complaint on December 31, 1981 and the date of judgment, July 28, 1983, TNJ was a public entity.
From a policy standpoint, it is not inconsistent to apply this section to limit the interest defendant must pay. In its original pretrial argument, defendant urged that the substantive provisions of the Tort Claims Act be applied. The trial judge noted the date of the accident, that the takeover was one month subsequent to the accident, that the effect of application of the Tort Claims Act would be to bar the majority of plaintiff's cause of action unless her condition were permanent with over $1,000 worth of medical expenses, and to subject her award to diminution by any collateral sources. He did not think that a private right of action should be denied under those circumstances *164 without a direction from a higher court, and so ruled not to apply the Tort Claims Act.
Here, defendant does not urge that the substantive portions of the Tort Claims Act apply to plaintiff's cause of action, but rather that N.J.S.A. 59:9-2(a) applies only to plaintiff's award. At the time of the entry of judgment, defendant was a public entity, and should not be made to pay the prejudgment interest from which it is exempt. The provisions of the Tort Claims Act should be read in conjunction with the declared legislative policy, which shapes the application and interpretation of the Tort Claims Act. Polyard v. Terry, 160 N.J. Super. 497, 506 (1978); aff'd 79 N.J. 547 (1978). Recovery against a public entity may be had, but only within the strict authority and policies guiding the interpretation of the act. 160 N.J. Super. at 506. The Legislature enunciated those policies as follows:
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration. [N.J.S.A. 59:1-2]
In view of this policy, it would not be inequitable to apply N.J.S.A. 59:9-2(a).
Plaintiff also contends that the public policy against piercing the corporate veil prevents, in this instance, the application of NJT Corp.'s immunity to TNJ, its wholly owned corporation. We disagree.
In the normal course of events, a corporation is a separate entity from its shareholders. Lyon v. Barrett, 89 N.J. 294, 300 (1982). A primary reason for incorporation is the *165 insulation of shareholders from liabilities arising from the corporation. State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 500 (1983). Since limitation of liability is the rule, courts will not pierce the corporate veil except in cases of fraud, injustice and the like. Lyon v. Barrett, 89 N.J. at 300.
The fact that TNJ exists in the form of a corporation cannot be used to limit the liability of the corporation or the State, because the 1979 Public Transportation Act specifically gives them a governmental function (N.J.S.A. 27:25-4). Instead, the Tort Claims Act controls. As previously noted, immunity from liability is the rule there, and liability the exception. Polyard v. Terry, 160 N.J. Super. at 506. Just as the practice of piercing the corporate veil is in derogation of the policy of limited liability, not to apply the Tort Claims Act immunity here is an elevation of the corporate form over what the Legislature has specifically stated should be a functional test. See Comment to N.J.S.A. 59:1-3. Since TNJ otherwise meets the criteria for application of the act, its corporate form should not preclude that application.
Finally, plaintiff argues that there was no proof presented at trial that NJT Corp. did conduct a stock purchase of TNJ. As the defendant points out, the trial judge obviously took judicial notice of what was a public record, and plaintiff made no objection. She cannot be heard to complain of that now.
Plaintiff also contends that the trial judge's refusal to charge aggravation of a preexisting injury is reversible error.
The judge brought up the subject of whether there should be an aggravation charge himself, judging from the inferences that the jury could draw from the facts. He broached the subject before the testimony of defendant's medical expert, Dr. David Seldin, D.D.S., was heard and determined that there should be an aggravation charge if there was any expert *166 testimony on the subject. Dr. Seldin did not present any such testimony, even when given the opportunity by defense counsel, by way of a hypothetical, to do so. Under the circumstances, the judge decided that the evidence did not warrant such a charge.
Although there was no direct expert testimony on aggravation, it is possible that, from the very fact that plaintiff had Temporomandibular Joint Syndrome (TMJ), became symptomfree, suffered a trauma and developed the symptoms again, the jury could infer the aggravation of a preexisting injury. Such a scenario obviously occurred to the judge, since he broached the subject.
Our standard of review, since defendant objected to the exclusion, is found in State v. Macon, 57 N.J. 325, 337-338 (1971). Error is harmless unless, in all the circumstances, there is a reasonable doubt that the error contributed to the verdict. 57 N.J. at 338-339; R. 2:10-2. When assessing alleged error in a jury charge, the charge must be read as a whole. State v. Wilbely, 63 N.J. 420, 422 (1973).
The trial judge charged the jury on credibility and expert witnesses, temporary injury and proximate cause of the accident to the injury and the injury to the damages. Defendant's attorney argued that, since she had TMJ syndrome in 1977 and still has it, she suffered no injury that was due to the accident. We are satisfied, however, that Dr. Seldin's testimony was inconclusive at best as to what caused the recurring pain. Under all circumstances, even if we accept the failure to charge aggravation as error, we find that the error did not contribute to the verdict, and thus was harmless.
The trial judge's ruling on N.J.S.A. 59:9-2a is reversed, and the award is modified to exclude any prejudgment interest. The judgment is affirmed as modified.